1
2
3
4
5
6                       UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
7                                 AT SEATTLE

8    JAVIER MARTINEZ,

9                          Petitioner,            Case No. C18-1669-RAJ-MAT

10          v.                                    REPORT AND RECOMMENDATION

11   LOWELL CLARK, et al.,

12                         Respondents.

13

14                I.        INTRODUCTION

15          Petitioner, who is currently detained at the Northwest Detention Center in Tacoma,

16   Washington, bring this 28 U.S.C. § 2241 immigration habeas action through counsel.  He

17   contends that his prolonged mandatory detention without a bond hearing violates the Fifth and

18   Eighth Amendments.  (Dkt. 1 at 7.)  He seeks immediate release or, in the alternative, a bond

19   hearing before an immigration judge.  (*Id.*)  Petitioner also filed a motion for a temporary

20   restraining order seeking immediate release pending resolution of the lawsuit or, in the

21   alternative, expedited review of this action.  (Dkt. 4.)  The Court found that petitioner's motion

22   for a temporary restraining order did not meet the immediate and irreparable injury standard of

23   Federal Rule of Civil Procedure 65(b), and therefore construed the motion as one for preliminary

REPORT AND RECOMMENDATION - 1

1    injunction.  (Dkt. 5 at 2.)  The Court ordered the Government to respond to the motion for

2    preliminary injunction at the same time it responded to the habeas petition.  (*See id.*)

3          The Government has moved to dismiss and opposed petitioner's motion for preliminary

4    injunction.  (Dkt. 7.)  The Government argues that petitioner's continued detention does not

5    violate Due Process or the Eighth Amendment and that he cannot meet the standards for

6    preliminary injunctive relief.  (*See id.*)  After the Government's motion was fully briefed, the

7    Court ordered supplemental briefing.  (Dkt. 11.)  The parties have submitted their supplemental

8    briefs and the matter is now ripe for review.

9          Having considered the parties' submissions, the balance of the record, and the governing

10   law, the Court recommends that both petitioner's habeas petition and the Government's motion

11   to dismiss be granted in part and denied in part.  Specifically, the Government should be ordered

12   to provide petitioner with an appropriate bond hearing because his current prolonged detention

13   violates the Due Process Clause, but his other claims and requests for relief should be denied.

14   The Court also recommends that petitioner's motion for a preliminary injunction be denied as

15   moot.

16                     II.        BACKGROUND

17         Petitioner is a native of Costa Rica and a citizen of Nicaragua who initially entered the

18   United States in September 1987 as a conditional resident.  (Dkt. 8-1 at 2.)  Petitioner became a

19   Lawful Permanent Resident in May 1990.  (Dkt. 8-2 at 2.)  In August 2000, petitioner pleaded

20   guilty to an aggravated felony, and the court sentenced him to 20 months in prison and five years

21   of supervised release.  (Dkt. 8-3.)

22         In April 2001, the Department of Homeland Security ("DHS") commenced removal

23   proceedings based on his felony conviction.  (*See* Dkt. 8-1.)  On September 11, 2002, the IJ

REPORT AND RECOMMENDATION - 2

granted petitioner's application for withholding of removal but did not enter an order of removal.[1]  (Dkt. 8-8.)

In August 2013, petitioner again pleaded guilty to an aggravated felony and the court sentenced him to 60 months in prison and four years of supervised release.  (Dkts. 8-10, 8-11.)  While his criminal case was pending, he was released on his personal recognizance until he was required to surrender to serve his sentence at the Federal Detention Center in Victorville, California.  (Dkt. 1 at ¶¶ 17-22.)  In January 2018, prior to petitioner's release from prison, the IJ granted DHS's motion to reopen his removal proceedings.  (Dkt. 8-12.)

On April 26, 2018, the Bureau of Prisons released petitioner into DHS custody.  (Dkt. 8-13.)  DHS served petitioner with a Notice to Appear for removal proceedings based on his 2013 conviction.  (Dkt. 8-14.)  DHS determined to hold petitioner without bond.  (Dkt. 8-15.)  At a bond hearing on October 30, 2018, approximately six months after entering DHS custody, the IJ found that he did not have jurisdiction to grant petitioner a bond because petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c).  (Dkt. 8-16.)  Petitioner did not appeal this decision.

Petitioner initiated this action on November 19, 2018, alleging violations of his Fifth and Eighth Amendment rights and seeking immediate release or, alternatively, a bond hearing before an IJ.  (Dkt. 1.)  As noted above, petitioner also filed a motion for a temporary restraining order seeking his immediate release from custody pending resolution of his habeas petition.  (Dkt. 4.)  The Court found that he failed to meet the standard for an ex parte temporary restraining order and construed his motion as one for preliminary injunction.  (Dkt. 5 at 3.)  The Court set the

---

[1] In *Matter of I-S- & C-S-*, 24 I. & N. Dec. 432 (BIA 2008), the Board of Immigration Appeals ("BIA") clarified that entry of an order of removal must precede or be included in the withholding decision.  Prior to this decision, it was not uncommon for IJs to enter withholding orders without removal orders.

REPORT AND RECOMMENDATION - 3

1  motion for preliminary injunction for consideration on the same schedule as the habeas petition

2  and ordered the Government to file a habeas return.  (*Id.*)  The Government timely filed a motion

3  to dismiss (Dkt. 7), and after the motion was fully briefed (Dkts. 9, 10), the Court ordered

4  supplemental briefing regarding the appropriate legal standard for petitioner's due process claim

5  (Dkt. 11; *see also* Dkts. 13-15).

6        On March 8, 2019, before briefing in this action was completed, an IJ denied petitioner's

7  applications for relief from removal and ordered him removed to Nicaragua or, alternatively,

8  Costa Rica.  (Dkt. 14-1 at 4-26.)  Petitioner timely appealed this decision to the BIA, and his

9  appeal remains pending.  (*See id.* at 32-36.)

10                  III.    <u>DISCUSSION</u>

11        The instant habeas petition challenges the constitutionality of petitioner's mandatory

12  detention under the Fifth Amendment's Due Process Clause and the Eighth Amendment's

13  Excessive Bail Clause.  The Court begins by explaining the statutory framework for immigration

14  detention and federal courts' interpretation of those statutes, and then turns to the merits of

15  petitioner's Fifth Amendment claim.  Finally, the Court addresses the Eighth Amendment claim.

16  As discussed below, the Court concludes that petitioner's continued mandatory detention violates

17  the Fifth Amendment and that he is entitled to a bond hearing; he is not, however, entitled to

18  release or relief under the Eighth Amendment.[2]

19  A.    <u>Statutory framework for immigration detention</u>

20        Three statutes govern immigration detention.  *See* 8 U.S.C. §§ 1225, 1226, 1231.

21  Although only one applies to petitioner, § 1226(c), the Court briefly discusses each to provide

22  context for the discussion below regarding petitioner's due process rights.

23

---

[2] The Government also argued that this action should be dismissed for failure to exhaust administrative remedies (Dkt. 7 at 8-9) but later withdrew this argument (Dkt. 10 at 5 n.2.)

REPORT AND RECOMMENDATION - 4

Section 1225 applies to "applicants for admission"—noncitizens who "arrive[] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1).[3] There are two categories of applicants for admission, those who fall under § 1225(b)(1) and those who fall under § 1225(b)(2). Section 1225(b)(1) applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *See Jennings v. Rodriguez*, 138 S. Ct. 803, 837 (2018) (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to [essentially] all applications for admission not covered by § 1226(b)(1) . . . ." *Id.* Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order. 8 U.S.C. § 1225(b)(1)(A)(i). If, however, a § 1225(b)(1) noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Under the statute, the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3. The statute does not impose "any limit on the length of detention" pending a decision on the asylum application and does not authorize bond hearings or release on bond. *Jennings*, 138 S. Ct. at 842-45. By contrast, noncitizens detained under § 1225(b)(2) are detained for removal proceedings if an

---

[3] Applicants for admission are also referred to as "arriving" noncitizens. 8 C.F.R. § 1001.1 ("Arriving [noncitizen] means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or [a noncitizen] seeking transit through the United States at a port-of-entry[.]").

immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" to the United States. 8 U.S.C. § 1225(b)(2)(A). The statute mandates detention until removal proceedings are completed. *Jennings*, 138 S. Ct. at 842, 845.

Section 1226 provides the framework for the arrest, detention, and release of noncitizens who are in removal proceedings. Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded.[4] 8 U.S.C. § 1226; *Jennings*, 138 S. Ct. at 846-48. The parties do not dispute that petitioner is detained pursuant to § 1226(c).

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ.[5] 8 C.F.R. § 236.1(d)(1). Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

Section 1231 governs the detention and release of noncitizens who have been ordered removed. During the "removal period," which typically lasts 90 days, detention is mandatory. 8

---

[4] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

[5] The Honorable Marsha J. Pechman recently issued an order granting bond hearings for certain asylum seekers detained under § 1226(a), finding evidence that the government regularly delayed providing these detainees with their requested hearings. *See Padilla v. U.S. Imm. & Customs Enforcement*, No. 18-928, 2019 WL 1506754 (W.D. Wash. Apr. 5, 2019).

REPORT AND RECOMMENDATION - 6

U.S.C. § 1231(a)(2).  The removal period is triggered by the latest of the following: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  If ICE is unable to remove the noncitizen during the removal period, DHS may continue to detain certain noncitizens specified in the statute or release them under an order of supervision.  8 U.S.C. § 1231(a)(6).  Section 1231(a)(6), however, does not authorize indefinite detention.  *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  In addition, the Ninth Circuit has held that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing.  *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011).

   To summarize, §§ 1225(b) and 1226(c) mandate detention without a bond hearing until removal proceedings have concluded, even if the detention becomes prolonged.  *Jennings*, 138 S. Ct. at 842, 847.  Section 1226(a) permits prolonged detention while removal proceedings are pending but gives noncitizens the opportunity to request a bond hearing.  Section 1231(a) requires detention during the removal period but authorizes DHS to release certain noncitizens after the removal period; noncitizens detained for a prolonged period under § 1231(a)(6) are entitled to a bond hearing in the Ninth Circuit and cannot be held indefinitely.

B.   Overview of caselaw interpreting the immigration detention statutes

   This case raises the question of whether and if so, when, due process requires a bond hearing for noncitizens subject to mandatory detention under § 1226(c).[6]  Neither the Supreme

---

[6] The undersigned recently considered the same issues for a noncitizen detained under § 1225(b)(1).  The Report and Recommendation in that case remains pending.  *Banda v. Nielsen*, No. C18-1841-JLR, Dkt. 14 (W.D. Wash. Apr. 10, 2019).

Court nor any Court of Appeals has answered the question, and district courts around the country have taken different approaches. This is the first case in which this District has considered the issue. The Court summarizes the relevant caselaw below.

1. *Supreme and Circuit Court authority*

"[I]n a series of decisions since 2001, the Supreme Court and [Ninth Circuit] have grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). First, in *Zadvydas*, the Supreme Court addressed § 1231(a)(6), which authorizes detention beyond the 90-day removal period for noncitizens who are subject to final orders of removal. 533 U.S. at 678. The petitioners claimed that they were being held indefinitely because the government could not execute their removal orders. The Supreme Court reasoned:

> A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). And this Court has said that government detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, *see United States v. Salerno*, 481 U.S. 739, 746 (1987), or, in certain special and "narrow" nonpunitive "circumstances," *Foucha, supra*, at 80, where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997).

*Id.* at 690. To avoid "serious constitutional concerns," the Court applied the canon of constitutional avoidance and held that § 1231(a)(6) does not authorize indefinite detention without a bond hearing and instead contains "an implicit 'reasonable time' limitation." *Id.* at

683, 699.  The Court noted that it had reason to believe "Congress previously doubted the constitutionality of detention for more than six months," and thus "for the sake of uniform administration of the federal courts," recognized a presumptively reasonable six-month period of post-removal order detention.  *Id.* at 701.  After six months, once a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  The Court noted, however, that the six-month presumption did not establish a bright-line rule for release; rather, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*

Next, in *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court considered a due process challenge to § 1226(c), which mandates detention during removal proceedings for noncitizens convicted of certain crimes.  The Court explained that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable noncitizens and held that "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings."  *Id.* at 518-21, 526.  In so holding, the Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, resulted in detention of less than about five months.  *Id.* at 529-30.  Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  *Id.* at 532.

Since *Zadvydas* and *Demore*, the Ninth Circuit has recognized that prolonged immigration detention without adequate procedural protections would raise "serious

constitutional concerns." *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) (addressing detention under § 1226(a)); *Diouf II*, 634 F.3d at 1086 (addressing detention under § 1231(a)(6)); *see also Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127, 1137, 1144 (9th Cir. 2013) (prolonged detention under §§ 1225(b) and 1226(c) without a bond hearing would be "constitutionally doubtful"); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (holding that constitutionality of 32-month detention under § 1226(c) was "doubtful").  To avoid these concerns, the Ninth Circuit applied the canon of constitutional avoidance to §§ 1225(b), 1226(a), 1226(c), and 1231(b)(6), and held that the statutes implicitly limit mandatory detention to six months, at which time the government must justify continued detention by presenting clear and convincing evidence of dangerousness or flight risk at an individualized bond hearing.  *See Rodriguez III*, 804 F.3d at 1078-1085 (addressing §§ 1225(b), 1226(a), and 1226(c)); *Diouf II*, 634 F.3d at 1092 (addressing § 1231(b)(6)); *Singh v. Holder*, 638 F.3d 1196, 1023, 1026, 1028 (9th Cir. 2011) (clarifying procedural requirements for prolonged detention bond hearings).  With respect to §§ 1225(b), 1226(a), and 1226(c), the Ninth Circuit further held that bond hearings were required every six months and that at the hearings, the IJ must consider restrictions short of detention.  *Rodriguez III*, 804 F.3d at 1087-89.

The other circuit courts that addressed prolonged mandatory detention under § 1226(c) also "recognized that the Due Process Clause imposed some form of 'reasonableness' limitation upon the duration of detention that can be considered justifiable under that statute," and each circuit "read an implicit reasonableness requirement into the statute itself, generally based on the doctrine of constitutional avoidance."  *Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 40000993 (1st Cir. May 11, 2018) (citing *Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018); *Rodriguez II*, 715

F.3d at 1138; *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222-23 (3d Cir. 2011), *abrogated by Jennings*, 138 S. Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269-70 (6th Cir. 2003)[7]); *see also Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018) ("[A]s a matter of constitutional avoidance, we readily join other circuits in holding that § 1226(c) 'implicitly authorizes detention for a reasonable amount of time . . . .'" (quoting *Diop*, 656 F.3d at 231)).   These circuits, however, divided on how to determine whether a bond hearing was required.   The Second Circuit joined the Ninth Circuit in establishing a bright-line rule requiring a bond hearing after six months detention.   *Lora*, 804 F.3d at 616.   The other circuits adopted a "case-by-case" approach that turned on the facts of each case.   *Sopo*, 825 F.3d at 1214-15 (summarizing holdings of the First, Third, and Sixth Circuits before adopting the case-by-case approach for the Eleventh Circuit).   This approach was driven by the "core principle" that "the reasonableness of any given detention pursuant to § 1226(c) is a function of whether it is necessary to fulfill the purpose of the statute."   *Id.* at 1217 (quoting *Diop*, 656 F.3d at 234, and citing *Zadvydas* and *Demore*).   To make this determination, the courts identified a non-exhaustive list of factors to serve as "guideposts" for lower courts conducting a reasonableness review.   *E.g.*, *id.* at 1218 (quoting *Reid*, 819 F.3d at 501).   For example, the Eleventh Circuit identified the amount of time the noncitizen had been in detention without a bond hearing, why the removal proceedings had become protracted, whether it will be possible to remove the noncitizen if there is a final order of removal, whether the noncitizen's immigration detention exceeded the time the noncitizen spent in prison for the crime that rendered him removable, and

---

[7] It appears that *Jennings* abrogated *Ly*'s reliance on the canon of constitutional avoidance to construe § 1226(c); however, courts citing *Ly* post-*Jennings* have not so recognized.   *See, e.g.*, *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *9 (S.D.N.Y. May 23, 2018).

1    whether the immigration detention facility was meaningfully different from a criminal penal

2    institution.  *Id.* at 1217-18.

3        In *Jennings*, the Supreme Court reversed *Rodriguez III*, holding that the Ninth Circuit

4    erroneously applied the canon of constitutional avoidance and that the plain text of §§ 1225(b),

5    1226(a), and 1226(c) unambiguously authorizes detention pending resolution of removal

6    proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings.

7    *Jennings*, 138, S. Ct. at 842, 846-47.  Rather than considering the parties' constitutional due

8    process arguments, the Court remanded to the Ninth Circuit for further proceedings.  *Id.* at 851-

9    52.  The Ninth Circuit, in turn, remanded to the district court to determine "the minimum

10   requirements of due process" for noncitizens detained under each statute.  *Rodriguez v. Marin*

11   ("*Rodriguez IV*"), 909 F.3d 252, 255 (9th Cir. 2018) (quoting *Morrissey v. Brewer*, 408 U.S. 471,

12   488-89 (1972)).  In doing so, the Ninth Circuit expressed "grave doubts that any statute that

13   allows for arbitrary prolonged detention without any process is constitutional or that those who

14   founded our democracy precisely to protect against the government's arbitrary deprivation of

15   liberty would have thought so."  *Id.* at 256.

16       2.    *Post-*Jennings *authority*

17       In the wake of *Jennings*, district courts have grappled with how to address due process

18   challenges to prolonged mandatory detention under § 1226(c).  The Ninth Circuit's guidance

19   thus far is limited to "grave doubts that any statute that allows for arbitrary prolonged detention

20   without any process is constitutional . . . ."  *Rodriguez IV*, 909 F.3d at 256.  Likewise, the Third

21   Circuit has stated in dicta, "*Jennings* did not call into question our constitutional holding in *Diop*

22   that detention under § 1226(c) may violate due process if unreasonably long."  *Borbot v. Warden*

23   *Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018).  Indeed, essentially all district

courts that have considered the issue agree that prolonged mandatory detention pending removal

proceedings, without a bond hearing, "will—at some point—violate the right to due process."

*Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018) (stating

general perspective shared by District Courts in New York); *see, e.g.*, *Bolus A.D. v. Sec. of

Homeland Security*, --- F. Supp. 3d ----, 2019 WL 1895059, at *2 (D. Minn. Apr. 29, 2019);

*Vargas v. Beth*, --- F. Supp. 3d ----, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019)

(collecting cases).

　　　　To analyze whether due process requires a bond hearing in a particular case, most courts

analyze certain case-specific factors derived from *Zadvydas*, *Demore*, and the First, Third, Sixth,

and Eleventh Circuits' pre-*Jennings* decisions regarding the reasonableness of prolonged

detention under § 1226(c), discussed above.  Some courts focus only on the reason for the delay,

denying habeas relief where the government has not unreasonably delayed and the removal

proceedings are proceeding through the regular course of litigation.  *E.g.*, *Crooks v. Lowe*, No.

18-047, 2018 WL 6649945, at *2 (M.D. Penn. Dec. 19, 2018) (denying relief for noncitizen

detained 18 months because "his case has proceeded through the removal process at a reasonable

pace and there is no indication in the record that the government has improperly or unreasonably

delayed the proceedings"); *Fernandez v. Lowe*, No. 17-2301, 2018 WL 3584697, at *4 (M.D.

Penn. July 26, 2018) (denying relief after fifteen month detention based on same reasoning as in

*Crooks*).

　　　　Other courts consider two factors: the length and the reason for the delay.  In this line of

cases, courts generally find that "detention for a year, or just over a year, [is] insufficient," but

detention for fifteen months or longer may entitle the petitioner to habeas relief.  *De Oliveira*

*Viegas v. Green*, --- F. Supp. 3d ----, 2019 WL 1423781, at *4 (D.N.J. Mar. 29, 2019) (collecting

1  cases and granting bond hearing where petitioner had been detained 15 months). With respect to

2  the reason for the delay, one court considered the petitioner's contribution to the delay, whether

3  there was evidence the government acted unreasonably or in bad faith, and the relative speed at

4  which the removal proceedings were moving through the immigration courts, *Dryden v. Green*,

5  321 F. Supp. 3d 496, 502-03 (D.N.J. 2018) (denying habeas relief where petitioner had been

6  detained 13 months, petitioner was responsible for the delay, there was no bad faith or

7  unreasonable action on the part of the government, and the immigration courts adjudicated his

8  removal proceedings relatively quickly), but most courts that rely on only two factors focus on

9  whether the *petitioner* acted in bad faith or engaged in "delay tactics," not the government, *see,*

10  *e.g.*, *De Oliveira Viegas*, 2019 WL 1423781, at *5 (granting habeas relief where noncitizen had

11  been detained for 15 months and discounting the fact that the noncitizen had sought continuances

12  because there was no indication that he acted in bad faith); *Liban A.D. v. Rodriguez*, No. 18-

13  6023, 2019 WL 1411062, at *3 (D.N.J. Mar. 28, 2019) (granting habeas relief where detention

14  lasted 18 months and noncitizen did not engage in "delay tactics"); *Carlos A. v. Green*, No. 18-

15  13356, 2019 WL 325543, at *4 (D.N.J. Jan. 25, 2019) (granting habeas relief where detention

16  lasted nearly 19 months and although the noncitizen was responsible for approximately six

17  months of delay, the remaining delay was "attributable to his having diligently pursued his

18  appellate rights"); *Charles A. v. Green*, No. 18-1158, 2018 WL 3360765, at *5 (D.N.J. July 10,

19  2018) (denying relief where noncitizen had been detained for one year and engaged in "delay

20  tactics").

21        A majority of district courts, however, analyze a number of factors to determine whether

22  a noncitizen's mandatory detention under 1226(c) violates due process. Those factors include

23  (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether

1    the detention will exceed the time the petitioner spent in prison for the crime that made him

2    removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention;

3    (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal

4    proceedings caused by the government; and (8) the likelihood that the removal proceedings will

5    result in a final order of removal. *See, e.g.*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261

6    (S.D.N.Y. 2018) (collecting cases from the Southern District of New York); *Vargas*, 2019 WL

7    1320330, at *8; *Bolus A.D.*, 2019 WL 1895059, at *2 (considering most of these factors); *Liban*

8    *M.J. v. Sec. of Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2019 WL 1238834, at *3 (D. Minn.

9    Mar. 18, 2019) (same); *Misquitta v. Warden Pine Prairie ICE Processing Center*, 353 F. Supp.

10   3d 518, 526 (W.D. La. Nov. 16, 2018) (same); *Baez-Sanchez v. Kolitwenzew*, 360 F. Supp. 3d

11   808, 815-16 (C.D. Ill. 2018) (considering several factors); *Gonzalez v. Bonnar*, No. 18-5321,

12   2019 WL 330906, at *4 - *5 (N.D. Cal. Jan. 25, 2019).

13   C.    Petitioner's prolonged detention is unreasonable

14          Having considered the above authority, the Court joins the vast majority of other district

15   courts to conclude that unreasonably prolonged detention under § 1226(c) without a bond

16   hearing violates due process.  This conclusion aligns with the Ninth Circuit's recent

17   pronouncement in *Rodriguez IV* that it has "grave doubts that any statute that allows for arbitrary

18   prolonged detention without any process is constitutional," 909 F.3d at 255, as well as Justice

19   Kenney's concurring opinion in *Demore*, 538 U.S. at 532 (Kennedy, J., concurring) ("[S]ince the

20   Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident

21   [detained under § 1226(c)] could be entitled to an individualized determination as to his risk of

22   flight and dangerousness if the continued detention became unreasonable or unjustified.").

23

1      The question, then, is how the Court should determine whether a noncitizen's prolonged

2  mandatory detention has become unreasonable.  Petitioner asks the Court to adopt a bright-line

3  rule that detention becomes unreasonably prolonged at six months.  (Dkt. 9 at 2 (citing

4  *Rodriguez v. Nielsen*, 2019 U.S. Dist. LEXIS 4228, at *18 (N.D. Cal. Jan. 7, 2019) ("In the

5  absence of controlling appellate authority, this Court concludes that the analytical framework set

6  forth in *Tijani*, *Casas*, and *Diouf* supports Rodriguez's argument that detention becomes

7  prolonged after six months and entitles him to a bond hearing."); Dkt. 14 at 1-5 (citing, *inter*

8  *alia*, *Zadvydas*).)  The Court declines to adopt such a rule as it is inconsistent with *Demore*, 538

9  U.S. 531 (upholding constitutionality of § 1226(c) where petitioner had been detained for six

10  months), and the fact-dependent nature of the constitutional question before the Court, namely

11  whether petitioner's prolonged detention has become unreasonable, *see Diop*, 656 F.3d at 234

12  ("Reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all

13  the circumstances of any given case."); *Sopo*, 825 F.3d 1215-17 (explaining why case-by-case

14  approach is better-aligned with reasonableness test than bright-line rule); *Reid*, 819 F.3d at 495-

15  98 (same).  It is also inconsistent with the many district court opinions discussed above that have

16  adopted a fact-dependent analysis rather than a bright-line rule.

17      Moreover, *Zadvydas* did not establish a constitutional presumption that detention longer

18  than six months is unconstitutional.  Rather, the Supreme Court established that at six months, a

19  § 1231(a)(6) detainee could be released if he or she came forward with "good reason to believe

20  that there is no significant likelihood of removal in the reasonably foreseeable future," at which

21  time the government would be required to rebut that showing.  *Zadvydas*, 533 U.S. at 701.  Thus,

22  at six months, the burden is on the detainee—not the government—to establish a basis for

23  release.  *Id.* (emphasizing that a noncitizen "may be held in confinement until it has been

1    determined that there is no significant likelihood of removal in the reasonably foreseeable

2    future"). Because petitioner's removal proceedings are ongoing, there is no basis on which to

3    conclude that there is no significant likelihood of removal in the reasonably foreseeable future.

4    *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-65 (9th Cir. 2008) (holding that petitioner's

5    detention was not indefinite because although there was uncertainty regarding when his removal

6    proceedings would conclude, he remained capable of being removed if it was ultimately

7    determined that he should be removed).

8        The Government argues the Court should hold that regardless of the length of detention

9    without a bond hearing, detention remains constitutional so long as there is no unreasonable

10   delay by the Government.[8] (Dkt. 13 at 4.) The Government cites *Demore* for the proposition

11   that mandatory detention is constitutional where it continues to serve the government's interests

12   in ensuring a noncitizen's presence at the time of removal and reducing the danger to the

13   community and flight risk criminal noncitizens present. (*Id.* at 3.) According to the

14   Government, these purposes are served by mandatory detention under § 1226(c) unless the

15   Government unreasonably delays pursuing and completing removal proceedings. (*Id.* at 4 (citing

16   Justice Kennedy's concurrence in *Demore*).) The Government also argues that the Court's test

17   should acknowledge that § 1226(c) requires detention for the entirety of the removal

18   proceedings, *see Jennings*, 138 S. Ct. at 847, and presumes such detention to be constitutional,

19

20

---

21   [8] The Government's motion to dismiss analyzed the constitutionality of petitioner's continued detention under the
     test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (whether due process mandates additional safeguards
22   requires analysis of (1) the private interests, (2) the governmental interests, and (3) the probable value of additional
     procedural safeguards). (Dkt. 7 at 7.) Given that this test is not the focus of post-*Jennings* district court decisions
     addressing the constitutionality of prolonged detention under § 1226(c), *see supra*, the Court declined to adopt it
23   absent additional briefing from the parties regarding the appropriate legal standard to apply to petitioner's due
     process claim. (Dkt. 11 at 3.) The Government's supplemental briefing abandoned the three-part *Mathews* test but
     continued to advocate for the principle set forth in *Mathews* that "[d]ue process is flexible and calls for such
     procedural protections as the particular situation demands." (*See* Dkts. 13, 15.)

1    *see SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 669 (9th Cir. 2002) ("Statutes are

2    presumed constitutional.") (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  (Dkt. 13 at 3.)

3           The Government asks the Court to adopt the approach of only a minority of district

4    courts.  Out of approximately 50 district court cases that have addressed the issue presented here,

5    the Court has found only seven that put a premium on whether the Government unreasonably

6    delayed the proceedings.  *E.g.*, *Misquitta*, 353 F. Supp. 3d at 526-27 (adopting multi-factor test

7    but explaining that factors must be tied back to whether detention has become unreasonable,

8    unjustified, or arbitrary in light of the purpose of § 1226(c), which the court found unlikely

9    absent evidence of government wrongdoing in connection with the removal proceedings);

10   *Crooks*, 2018 WL 6649945, at *2 (denying relief for noncitizen detained 18 months because "his

11   case has proceeded through the removal process at a reasonable pace and there is no indication in

12   the record that the government has improperly or unreasonably delayed the proceedings");

13   *Fernandez*, 2018 WL 3584697, at *4 (denying relief after fifteen month detention based on same

14   reasoning as in *Crooks*).

15          The Court declines to adopt this approach.  First, most district courts have adopted tests

16   that do not turn on whether the Government acted unreasonably.  *See supra*.  Second, the

17   Government's argument "fails to address that the Supreme Court limited its *Demore* holding to a

18   brief period of detention under § 1226(c)."  *Liban M.J.*, 2019 WL 1238834, at *2 (rejecting

19   argument similar to the Government's argument here); *Muse v. Sessions*, No. 18-054, 2018 WL

20   4466052, at *3 (D. Minn. Sept. 18, 2018) (same); *Gonzalez*, 2019 WL 330906, at *4 - *5

21   (rejecting similar argument and concluding that "the starting point of the analysis is the length of

22   detention").  "In contrast to the situation at the time *Demore* was decided, case processing times

23   today are considerably longer."  *Gonzalez*, 2019 WL 330906, at *4.  Thus, most district courts

1   have not interpreted Justice Kennedy's concurrence as limiting unconstitutional detention to

2   situations where the government unreasonably delays the proceedings.  And third, allowing a §

3   1226(c) detainee an individualized bond hearing does not impede the Government's valid

4   interests in protecting the community and ensuring that removable noncitizens appear for their

5   removal proceedings and at the time of removal; bond hearings simply ensure that the detention

6   is justified on an individual basis.  *See Baez-Sanchez*, 360 F. Supp. 3d at 816.  Indeed, IJs have

7   the authority to continue a noncitizen's detention if his or her particular circumstances warrant it.

8          Instead of adopting either parties' proposed test, the Court adopts the multi-factor

9   analysis that many other courts have relied upon to determine whether § 1226(c) detention has

10  become unreasonable.  To reiterate, those factors are (1) the total length of detention to date; (2)

11  the likely duration of future detention; (3) whether the detention will exceed the time the

12  petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes the

13  petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings

14  caused by the petitioner; (7) delays in the removal proceedings caused by the government; and

15  (8) the likelihood that the removal proceedings will result in a final order of removal.  *See*

16  *Cabral*, 331 F. Supp. 3d at 261; *Bolus A.D.*, 2019 WL 1895059, at *2.  The Court discusses each

17  factor below.

18         First, the Court considers the most important factor—the length of detention.  *E.g.*,

19  *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, *Sopo*, and *Diop*).  The longer detention

20  continues beyond the "brief" period authorized in *Demore*, the harder it is to justify.  *See Liban*

21  *M.J.*, 2019 WL 1238834, at *3 ("Although there is no bright-line rule for what constitutes a

22  reasonable length of detention, Petitioner's [12-month] detention has lasted beyond the 'brief'

23  period assumed in *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted

longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months."); *De Oliveira Viegas*, 2019 WL 1423781, at *4 (courts in the District of New Jersey generally deny habeas relief where the petitioner has been detained for a year or just over a year, but granting relief where petitioner was detained 15 months). Petitioner has been detained since April 26, 2018, nearly 13 months. "Other courts have required bond hearings for detentions of similar and much shorter lengths." *Liban M.J.*, 2019 WL 1238834, at *3. The length of petitioner's detention favors granting him a bond hearing.

Second, the Court considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals. *Bolus A.D.*, 2019 WL 1895059, at *2. Petitioner only recently filed his appeal of the IJ's removal order with the BIA, which may take six months or longer to reach a decision. (*See* Dkt. 14-1 at 37 ¶ 3.) If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process takes approximately 12-20 months from the notice of appeal date. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited 5/15/19). This factor favors granting petitioner a bond hearing.

Third and fourth, the Court reviews the length of detention compared to petitioner's criminal sentence and the nature of his crimes. *Cabral*, 331 F. Supp. 3d at 262. Petitioner was sentenced to 60 months in prison for drug related felonies and has been detained for only approximately 13 months. He also committed the drug related felonies in 2000 and was sentenced to 20 months in prison. Although petitioner committed serious crimes and the length his most recent sentence was significantly longer than his current detention, the Court concludes that it would not be futile to grant him a bond hearing, particularly given that he was released on

1   personal recognizance pending trial and sentencing, appeared in court as required and

2   surrendered for his sentence, and did not commit further crimes or otherwise endanger the public

3   while he was released.  Nevertheless, these factors favor the Government.

4          Fifth, the Court considers the conditions of the detention facility where the petitioner is

5   detained.  *Bolus A.D.*, 2019 WL 1895059, at *2.  "The more that the conditions under which the

6   [noncitizen] is being held resemble penal confinement, the stronger his argument that he is

7   entitled to a bond hearing."  *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019)

8   (quoting *Muse*, 2018 WL 4466052, at *5).  Neither party has submitted evidence regarding the

9   conditions of petitioner's confinement at the Northwest Detention Center, and therefore the

10  Court concludes that this factor is neutral.

11         As to the sixth and seventh factors, the Court considers the nature and extent of any

12  delays in the removal proceedings caused by petitioner and the government, respectively.  *Liban*

13  *M.J.*, 2019 WL 1238834, at *4; *Sajous*, 2018 WL2357266, at *10 - *11.  "Petitioner is entitled to

14  raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his

15  claim that detention has become unreasonable."  *Liban M.J.*, 2019 WL 1238834, at *4 (citing

16  *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he

17  mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably

18  prolonged detention, especially where the Government fails to distinguish between bona fide and

19  frivolous arguments in opposition.")).  Courts, however, should be "sensitive to the possibility

20  that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of

21  deportation, but also to compel a determination that the [noncitizen] must be released because of

22  the length of his incarceration."  *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence

23  that the [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of

1  obtaining release cuts against the [noncitizen].").  With respect to the government, "If

2  immigration officials have caused delay, it weighs in favor of finding continued detention

3  unreasonable. . . .  Continued detention will also appear more unreasonable when the delay in the

4  proceedings was caused by the immigration court or other non-ICE government officials."

5  *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and *Reid*)).

6         Petitioner was taken into DHS custody on April 26, 2018, and his first master calendar

7  hearing before an IJ did not occur until July 24, 2018.  (Dkt. 16 at ¶ 3.)  The hearing was

8  adjourned to August 27, 2018 to allow petitioner time to prepare.  (*Id.*)  At the August 27, 2018

9  hearing, petitioner filed a motion to terminate.  (*Id.* at ¶ 4.)  The hearing was adjourned to

10  September 26, 2018 to allow petitioner time to prepare and file an application for relief from

11  removal.  (*Id.*)  Prior to the September 26, 2018 hearing, the IJ denied petitioner's motion to

12  terminate.  (*Id.* at ¶ 5.)  At the September 26, 2018 hearing, petitioner filed applications for relief

13  from removal, and the hearing was adjourned to November 27, 2018 for a merits hearing on

14  petitioner's applications.  (*Id.* at ¶ 6.)  The November 27, 2018 hearing was adjourned to

15  December 7, 2018 due to leave of the IJ.  (*Id.* at ¶ 8.)  The IJ conducted merits hearings on

16  December 7, 2018, January 25, 2019, and March 8, 2019.  (*Id.* at ¶¶ 9-11.)  On March 8, 2019,

17  the IJ issued her written decision denying petitioner's applications for relief and ordered him

18  removed.  (*Id.* at ¶ 11.)  On March 29, 2019, petitioner sent his appeal to the BIA for filing.

19  (Dkt. 14-1 at 36.)

20         Based on this record, there is no indication that petitioner engaged in deliberate delay

21  tactics.  He requested two reasonable continuances so he could prepare and file a motion to

22  terminate and applications for relief from removal.  The Court thus concludes that the sixth

23  factor favors petitioner.

DHS, likewise, did not engage in deliberate delay tactics. Most of the delay—from April 26, 2018 to July 24, 2018, and November 27, 2018 to March 8, 2019—appears to have stemmed from the immigration court's crowded docket. Although not the result of intentional action on behalf of government officials, this delay is attributable to the Government. *See Sajous*, 2018 WL 2357266, at *11 (citing *Ly* for the proposition that "the operative question should be whether the [noncitizen] has been the cause of the delayed immigration proceeding and, where the fault is attributable to some entity other than the [noncitizen], the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable"); *Durkay v. Decker*, No. 18-2898, 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (weighing delay caused by immigration court in favor of the petitioner). Accordingly, the seventh factor also favors petitioner.

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 2019 WL 1238834, at *4. In other words, the Court considers whether the noncitizen has asserted any defenses to removal. *Sajous*, 2018 WL 2357266, at *11. Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered. *Id.* (citing *Demore*). But where a noncitizen has asserted a good faith challenge to removal, "the categorical nature of the detention will become increasingly unreasonable." *Id.* (quoting *Reid*, 819 F.3d at 400-500). Petitioner here filed applications for relief from removal that the IJ denied. (Dkt. 14-1 at 4-26.) Petitioner has appealed that determination, and the Court does not have sufficient information to determine whether the appeal is nonfrivolous or whether

1  petitioner ultimately will prevail.  Accordingly, the Court concludes that this factor does not

2  weigh in favor of either party.

3          In sum, four of the eight factors weigh in favor of granting petitioner a bond hearing, two

4  weigh in favor of the Government, and two are neutral.  The Court thus concludes that

5  petitioner's continued mandatory detention under § 1226(c) has become unreasonable and in

6  violation of due process.

7  D.    Remedy

8          As a remedy, petitioner asks the Court to order his immediate release or, in the

9  alternative, direct that he receive an individualized bond hearing.  There is no authority

10  supporting petitioner's claim that he is entitled to an order of release.  Rather, the proper remedy

11  is a bond hearing where the government must "show by clear and convincing evidence that the

12  detainee presents a flight risk or a danger to the community at the time of the bond hearing."

13  *Calderon-Rodriguez v. Wilcox*, --- F. Supp. 3d ----, 2019 WL 486409 (W.D. Wash. Feb. 7, 2019)

14  (citing *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011)); *see also Cortez v. Sessions*, 318 F.

15  Supp. 3d 1134, 1146-47 (N.D. Cal. 2018) (holding that *Singh*'s standards continue to apply to

16  prolonged detention bond hearings post-*Jennings*); *Guerrero-Sanchez v. Warden York Cnty.*

17  *Prison*, 905 F.3d 208, 224 n.12 (3d Cir. 2018) (adopting *Singh*'s clear and convincing evidence

18  standard post-*Jennings*); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435-36 (S.D.N.Y. 2018)

19  (same).  The bond hearing also must comply with *Singh*'s other procedural requirements.  *See*

20  *Singh*, 638 F.3d at 1206-08.

21  E.    Petitioner is not entitled to relief under the Eighth Amendment

22          Petitioner claims that his continued detention without a bond hearing violates the Eighth

23  Amendment's Excessive Bail Clause.  (Dkt. 1 at 7.)  He argues that he is not a danger to the

1   community, citing the fact that he was released on personal recognizance pending trial and after

2   sentencing, and therefore the only governmental interest in detaining him is preventing flight,

3   which is insufficient to hold him at no bond.  (Dkt. 9 at 6-7.)  The Government contends that

4   petitioner fails to state a claim because no bail has been set in this matter and thus petitioner has

5   no basis upon which to argue that bail is excessive.  (Dkt. 7 at 8 (citing *Madrigal v. Nielsen*, No.

6   18-843, 2018 WL 4732469, at *11 - *12 (W.D. Wash. Aug. 31, 2018), *R & R adopted*, 2018 WL

7   4700552 (W.D. Wash. Oct. 1, 2018)).)  As discussed below, the Court concludes that petitioner's

8   Eighth Amendment claim fails, but not for the reason asserted by the Government.

9        The Eighth Amendment states, "Excessive bail shall not be required . . . ."  U.S. Const.

10  Amend. VIII.  The Excessive Bail Clause does not "accord a right to bail in all cases, but merely

11  [provides] that bail shall not be excessive in those cases where it is proper to grant bail."

12  *Carlson v. Landon*, 342 U.S. 524, 545 (1952); *see also Leader v. Blackman*, 744 F. Supp. 500,

13  509 (S.D.N.Y. 1990) ("It is well settled that bail may be denied under many circumstances,

14  including deportation cases, without violating any constitutional rights.").  "[W]hen Congress

15  has mandated detention on the basis of a compelling interest other than prevention of flight, . . .

16  the Eighth Amendment does not require release on bail."  *United States v. Salerno*, 481 U.S. 739,

17  752 (1987).

18       With respect to § 1226(c), Congress mandated the detention of noncitizens who have

19  committed certain crimes to prevent such noncitizens from "absconding or *engaging in criminal*

20  *activity* before a final decision can be made" in their removal proceedings.  *Jennings*, 138 S. Ct.

21  at 836 (emphasis added); *see also Demore*, 538 U.S. at 518, 527-28 (explaining that mandatory

22  detention under § 1226(c) serves the purposes of preventing both flight and additional criminal

23  activity by the noncitizens who fall within its scope).  Although petitioner claims that he does not

present a danger to the community, he has committed serious crimes that qualify him for detention under § 1226(c).  Because § 1226(c) mandates detention for reasons other than prevention of flight, petitioner's detention does not violate the Excessive Bail Clause.  *See Salerno*, 481 U.S. at 752; *Marogi v. Jenifer*, 126 F. Supp. 2d 1056, 1062 (E.D. Mich. 2000) (rejecting Excessive Bail Clause challenge by a noncitizen detained under § 1226(c)); *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 218 (D. Conn. 2000) (same); *Alexis v. Sessions*, No. 18-1923, 2018 WL 5921017, at *9 (S.D. Tex. Nov. 13, 2018) (same).

## IV.    CONCLUSION

The Court RECOMMENDS:

(1)    Petitioner's habeas petition (Dkt. 1) be GRANTED in part and DENIED in part. The petition should be GRANTED as to petitioner's due process claim and request for a bond hearing and DENIED in all other respects.

(2)    The Government's motion to dismiss (Dkt. 7) should be GRANTED in part and DENIED in part.  The motion should be DENIED as to petitioner's due process claim and request for a bond hearing and GRANTED in all other respects.

(3)    The Government should be ORDERED to provide petitioner with an individualized bond hearing that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), within 30 days of the order on this Report and Recommendation.

(4)    Petitioner's motion for a preliminary injunction (Dkt. 4) should be DENIED as moot.

A proposed order that details these recommendations accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**June 7, 2019**</u>.

Dated this 23rd day of May, 2019.

Mary Alice Theiler
United States Magistrate Judge